NOT FOR PUBLICATION                                                                   (Doc. No. 4)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

——————————————————— :
                                               :
BERNARD RUSSELMAN,                             :
                                               :
                       Plaintiff,              :          Civil No. 12-752 (RBK/AMD)
                                               :
           v.                                  :          **OPINION**
                                               :
EXXONMOBIL CORPORATION AND                     :
JOHN AND JANE DOES (fictitious                 :
parties),                                      :
                                               :
                       Defendants.             :
                                               :
——————————————————— :

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion of Exxon Mobil Corporation,

improperly pled as ExxonMobil Corporation ("Defendant"), to Dismiss the Complaint of

Bernard Russelman ("Plaintiff"). Defendant brings his Motion pursuant to Federal Rule of Civil

Procedure 12(b)(6), asserting that Counts Two through Seven of Plaintiff's Complaint fail to

state claims upon which relief can be granted. For the reasons set forth below, this Court grants

Defendant's 12(b)(6) Motion to Dismiss Counts Two through Seven of the Complaint.

## I.      BACKGROUND

Because this matter is before the Court on a Motion to Dismiss, the following facts are

taken from the Amended Complaint and assumed to be true.

The present lawsuit comes before this Court as a result of Plaintiff's termination from his

employment as a "Level 1 Technical Support" staff at Defendant's facility in Paulsboro, N.J.

Am. Compl., ¶ 5. On February 29, 2012, Defendant filed a Motion to Dismiss Counts Two through Seven of Plaintiff's Amended Complaint.

On or about March 24, 2010, Plaintiff escorted a friend, who had applied for a position at Defendant Corporation, on a tour of the facility. Id. at ¶ 7. The friend received a security badge from the visitor's desk and signed in at the security desk. Id. at ¶¶ 8, 9. Plaintiff and his friend entered the main building, then Building 4, Building 25, and Building 3, respectively. Id. at ¶¶ 10, 11. While in Building 25, Defendant and his friend were instructed by an unidentified man to leave because they were not wearing the required steel-toed boots or safety goggles. Id. at ¶ 10. While in Building 3, Defendant and his friend were told by the same unidentified man to leave. Id. at ¶ 12. The unidentified man subsequently asked Plaintiff "who he was and who he worked for," at which point Plaintiff provided this information. Id. Following this interaction, Plaintiff and his friend returned to the lobby and returned the visitor's badge to the security desk. Id. at ¶ 13.

When Plaintiff returned to work on March 25, 2010, he was questioned about the prior day's events. The following day, on March 26, 2010, Plaintiff met with his supervisor and a woman, described in the Complaint as from "The Business," for approximately an hour regarding the incident. Id. at ¶ 15. "The Business" is "ExxonMobil Research and Engineering, [which] owns the equipment and facilities." Id. Later, Plaintiff was informed by his supervisor that an investigation of the incident would commence, during which time Plaintiff would be given paid time off. Id.

On April 11, 2010, Plaintiff's supervisor called him at home and asked him to come into the office the next morning. Id. at ¶ 16. On April 12, 2010, Plaintiff was informed that "the investigation into the incident had been performed and that he was being terminated from the

company." Id. at ¶¶ 16, 17.  Plaintiff had been an employee of Defendant Corporation since

September 1986. Id. at ¶ 6.

Following his termination, Plaintiff was initially denied unemployment benefits because

Defendant stated that Plaintiff's "misconduct" as an employee rendered him ineligible. Id. at ¶

19. Eventually, on May 24, 2010, Plaintiff began receiving unemployment benefits. Id. Plaintiff

claims that his allegedly illegal termination caused him "financial turmoil," forcing him to sell

stock and sell his house after the receipt of foreclosure notices from the bank. Id. at ¶ 20. In

addition, Plaintiff claims that he is "forced to recount the incident over and over again, including

the allegation that Plaintiff somehow engaged in misconduct," which negatively impacts his

interactions with future employers. Id. at ¶ 21. Further, Plaintiff's termination prohibits him from

collecting his full pension benefits and prevents him from receiving a sum pension payment. Id.

at ¶ 23. Instead, Plaintiff receives his pension through annuity payments. Id.

Plaintiff claims that Defendant's alleged actions (1) violated New Jersey's Law Against

Discrimination ("LAD"), N.J.S.A. 10:5-1 et seq.; (2) led to his wrongful termination in bad faith;

(3) violated the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1

et seq.; (4) resulted in his wrongful termination in violation of contract; (5) violated an implied

covenant of good faith and fair dealing; (6) constituted an intentional infliction of emotional

distress; and (7) resulted in the defamation of his character to third-parties. Id. at ¶¶ 24-50. For

each of the seven counts, Plaintiff seeks compensatory and punitive damages and other relief and

damages, including reasonable attorney's fees and expenses and costs of suit. Am. Compl. in

total.

## II.     STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a Motion to Dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a Motion to Dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To make this determination, a three-part analysis is needed. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 129 S.Ct. at 1947). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. (quoting Iqbal, 129 S.Ct. at 1950). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 129 S.Ct. at 1950). This plausibility determination is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1949. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. Id.

**B. Leave to Amend**

Where a complaint is dismissed for failure to state a claim, leave to amend should normally be granted. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  However, the rule is

not absolute: leave to amend is inappropriate where it would cause undue delay, the amendment

is motivated by bad faith or a dilatory motive, the amendment would cause prejudice, or the

amendment is futile. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.

1997). "'Futility' means that the complaint, as amended, would fail to state a claim upon which

relief could be granted. In assessing "futility," the District Court applies the same standard of

legal sufficiency as applies under Rule 12(b)(6)." Id. (citing 3 Moore's Federal Practice, supra §

15.15[3], at 15-47 to -48 (3d ed. 2000).

Leave to amend is rarely applied sua sponte. Fletcher-Harlee Corp. v. Pote Concrete

Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007). In Fletcher-Harlee, the Third Circuit held

that "in ordinary civil litigation it is hardly error for a district court to enter final judgment after

granting a Rule 12(b)(6) motion to dismiss when the plaintiff has not properly requested leave to

amend its complaint." Id. at 253 (stating that the court "rarely applied the sua sponte amendment

rule outside of the context of a civil rights case . . . In non-civil rights cases, the settled rule is

that properly requesting leave to amend a complaint requires submitting a draft amended

complaint." Id. at 252-53).

## III. DISCUSSION

### A. Count Two: Wrongful Termination in Bad Faith

Defendant argues that Count Two of Plaintiff's Complaint fails to allege wrongful

termination in bad faith. Plaintiff does not oppose this argument.

Plaintiff claimed that "Defendants terminated Plaintiff without an honest belief that good

cause for discharge was in fact present," which constituted wrongful termination in bad faith.

Am. Compl., ¶ 24. In response, Defendant argues that "there is no such claim as 'wrongful

termination in bad faith' and ignoring the fact that there were ample legitimate reasons for

5

Plaintiff's termination, [Defendant] is not required to have 'good cause' to terminate an employee." Br. in Support of Def.'s Mot. to Dismiss, 7.

"In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine. An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise." Witkowski v. Thomas J. Lipton, Inc., 643 A.2d 546, 552 (N.J. 1994) (internal citations omitted). The application of the facts of this case to this legal standard is discussed in detail in Section III(C) below. Based on this application, this Court determines that because Plaintiff had an at-will employment contract, Defendant was not required to have "good cause" for Plaintiff's termination.

Moreover, this Court declines to categorize Plaintiff's Count Two as a Pierce claim. See Pierce v. Ortho Pharmaceutical Corp., 417 A.2d 505 (N.J. 1980). In Pierce, the court held that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." Id. at 72. According to Pierce, "[t]he sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions. In certain instances, a professional code of ethics may contain an expression of public policy." Id. Here, Plaintiff's Amended Complaint fails to identify a specific expression of public policy, and, as discussed in Pierce, failure to do so empowers the court to grant a motion to dismiss. Id. at 73.

Further, even if Plaintiff had adequately alleged a Pierce claim, the facts supporting the claim would be the same as those supporting the LAD claim, which is Count One of the Amended Complaint. As asserted in Defendant's brief, "to the extent Plaintiff bases his common law Pierce claim on the public policy of the LAD and asserts a claim under both, the former is subsumed by the latter." Br. in Support of Def.'s Mot. to Dismiss, 8. As cited in Defendant's

brief, in <u>Bosshard v. Hackensack Univ. Med. Ctr.</u>, the court held that a claim alleging a <u>Pierce</u> violation was prohibited because "it does not seek to vindicate interests independent of those protected by the LAD." <u>Id.</u> (citing 783 A.2d 731, 738-39 (App. Div. 2001); <u>see</u> <u>Catalane v. Gilian Instrument</u>, 638 A.2d 1341 (App. Div. 1994), <u>cert. denied</u>, 136 N.J. 298, 642 A.2d 1006 (1994) ("[S]upplementary common law causes of action may not go to the jury when a statutory remedy under the LAD exists.")).

For the foregoing reasons, this Court grants Defendant's Motion to Dismiss Count Two of the instant case.

**B. Count Three: Termination in Violation of the Conscientious Employee Protection Act, N.J.S.A. 34: 19-1 <u>et</u> <u>seq.</u>**

Defendant argues that Count Three of Plaintiff's Complaint fails to allege a CEPA claim. Plaintiff does not oppose this argument.

To establish a prima facie case under CEPA, an employee must demonstrate that (1) he reasonably believed that his employer's conduct was violating the law; (2) he performed "whistle-blowing" activity as defined in the statute; (3) an adverse employment action was taken against him; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. <u>Blackburn v. United Parcel Serv., Inc.</u>, 179 F.3d 81, 92 (3d Cir. 1999).

Plaintiff's Complaint does not establish all four prongs of this test. As discussed in Defendant's brief, "Plaintiff fails to allege that he believed [Defendant's] conduct violated a law or regulation (but for his termination); fails to allege he performed 'whistle-blowing activity' as defined under the CEPA; fails to identify what statute, rule, regulation or clear mandate of public policy was violated; and consequently, fails to allege that any whistle-blowing activity caused an

7

adverse employment action." Br. in Support of Def.'s Mot. to Dismiss, 6. While Plaintiff asserts

that he was terminated because of his age and "because of upper management's possible loss of

monetary bonus due to the incident possibly being reported to O.S.H.A. or another regulatory

entity" (Am. Compl., ¶ 26), these allegations, unsupported by whistle-blowing activity, do not

support a CEPA claim. The facts, as set out in the Amended Complaint, do not plead "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 129 S. Ct. at 1949 (2009).

### C. Count Four: Wrongful Termination in Violation of Contract

Plaintiff contends that Count Four of Defendant's Motion to Dismiss should be denied

because the Amended Complaint sufficiently alleged a claim for wrongful termination in

violation of a contract. Br. in Opp'n to Def.'s Mot. to Dismiss, 2. Count Four alleges breach of a

contract, purportedly created by the contents of Defendant's employee manual. Id. (see Woolley

v. Hoffman-La Roche, Inc., 491 A.2d 1257 (N.J. 1985), modified by, Woolley v. Hoffman-La

Roche, Inc., 499 A.2d 515. According to Woolley v. Hoffman-La Roche, Inc., "[A]bsent a clear

and prominent disclaimer, an implied promise contained in an employment manual that an

employee will be fired only for cause may be enforceable against an employer even when the

employment is for an indefinite term and would otherwise be terminable at will." Woolley, 491

A.2d at 1257. Claims based on this premise are often referred to as Woolley claims.

Plaintiff argues that "[u]nder New Jersey law, an implied employment contract can be

found based on an employment manual if the employee can show that termination procedures in

a the manual could reasonably be understood by an employee to create binding duties and

obligations between employer and employee." Br. in Opp'n to Def's Mot. to Dismiss, 2.

Plaintiff's Amended Complaint states that, "Plaintiff's employment with [Defendant] was

8

governed by the terms and conditions of an employee handbook. By virtue of the employee

handbook, Plaintiff and Defendants had a contractual relationship." Am. Compl. ¶ 39.

Additionally, the Amended Complaint alleges that "Defendant wrongfully discharged Plaintiff in

violation of the contractual provisions of the employee handbook." Id. at ¶ 40.

Defendant argues that this description is insufficient to survive a Motion to Dismiss,

contending that "where a plaintiff cannot point to any specific language reasonably giving rise to

a contractually binding obligation, his claim must be dismissed." Br. in Support of Def.'s Mot. to

Dismiss, 10. In response, Plaintiff alleges that citing a specific provision of the employee manual

is not required to survive a Motion to Dismiss. Br. in Opp'n to Def.'s Mot. to Dismiss, 3.

Plaintiff argues that this increased level of specificity is only required on a Motion for Summary

Judgment, but does not cite case law to support this argument. Id. For the following reasons, this

Court rejects Plaintiff's argument and grants Defendant's Motion to Dismiss Count Four of the

Amended Complaint.

In New Jersey, employment is presumptively at-will, meaning that an employer may

terminate an employee "for good reason, bad reason, or no reason at all." Witkowski v. Thomas

J. Lipton, Inc., 136 N.J. 385, 643 A.2d 546, 552 (N.J. 1994) (citing English v. Coll. of Med. &

Dentistry, 73 N.J. 20, 372 A.2d 295 (N.J. 1977)). The presumption that an employee serves at the

will of the employer can be overridden by an agreement to the contrary. Id. Such an agreement

can be implied from a widely distributed employment manual that articulates terms and

conditions of employment, including grounds and procedures for termination. Id. at 553.

To state a claim for breach of an implied contract created by an employment manual, a

plaintiff must point to some language in the manual that contains "an express or implied promise

concerning the terms and conditions of employment." Id.; see Doll v. Port Auth. Trans–Hudson

Corp., 92 F. Supp. 2d 416, 423 (D.N.J. 2000) ("[I]n order to state a <u>Woolley</u> claim <u>in the first instance</u>, plaintiff must bring to the Court's attention some provision or language in the employment manual that guarantees the employee will not be terminated except for good cause." (emphasis added)).

To determine whether an employment manual creates contractual obligations, a court should consider whether a fair reading of the manual gives rise to the reasonable expectations of employees that "certain benefits are an incident of the employment (including, especially, job security provisions)." <u>Witkowski</u>, 643 A.2d at 552 (quoting <u>Woolley</u>, 491 A.2d at 1257). Factors relevant to whether a manual gives rise to the reasonable expectation of employer obligations include the "definiteness and comprehensiveness of the termination policy and the context of the manual's preparation and distribution." <u>Id.</u> at 550 (quoting <u>Woolley</u>, 491 A.2d at 1257).

In <u>Ruffo v. Wawa, Inc.</u>, the court granted the defendant's motion to dismiss, despite the plaintiff's assertion that she was not in possession of a copy of the employee handbook at the time the Complaint was submitted, and as such, she had not had the opportunity to conduct a reasonable inquiry into the factual and legal sufficiency of her claim as required by the Federal Rules of Civil Procedure as well as the New Jersey Rules of Professional Conduct. <u>Ruffo v. Wawa, Inc.</u>, No. CR 09-5264, 2010 WL 1491714, at *4 (D.N.J. Apr. 13, 2010) (referencing Fed. R. Civ. P. 11; New Jersey RPC 3.1). The court specifically addressed Plaintiff's contention that she was not in possession of the handbook at the time the Complaint was filed by stating:

> [I]t is unclear to the Court how Plaintiff's counsel can in good faith—and consistent with the aforementioned rules—claim that "Plaintiff's termination is in direct contradiction with her employee handbook . . . ," while insisting in his opposition brief that Defendant's motion is premature because Plaintiff's counsel is seeing the Handbook for the first time as an attachment to Defendant's motion.

<u>Id.</u>

Further, the court in <u>Wawa</u> explained that the Motion to Dismiss was granted because the plaintiff failed to "point to any specific language in the Handbook that she believes gives rise to the reasonable expectation that Wawa [her employer] could not fire her without cause." <u>Id.</u> at *3.

Similarly, in <u>Mitchell v. C&S Wholesale Grocers, Inc.</u>, the defendant failed to "point to any specific provision or challenge in the employee handbook(s) . . . which he claims created a contractual obligation and how that specific obligation was breached." <u>Mitchell v. C & S Wholesale Grocers, Inc.</u>, No. CIV 10-2354, 2010 WL 2735655, at *6 (D.N.J. July 8, 2010). Therefore, the court reasoned that,

> Plaintiff's allegations related to his contract claims amount to nothing more than the most basic threadbare recitals of a breach of contract claim. Such bare allegations do not meet the <u>Iqbal-Twombly</u> pleading standard and preclude any meaningful analysis of the parties' legal arguments as they apply to this case.

<u>Id.</u>

Here, like the plaintiff in <u>Wawa</u>, Plaintiff seeks the "opportunity to conduct discovery, to obtain a copy of the employment manual (and all attachments thereto) and engage in other aspects of discovery to support Plaintiff's claim." Br. in Opp'n to Def.'s Mot. to Dismiss, 3. As in <u>Wawa</u>, Plaintiff's lack of a copy of the employee handbook does not absolve Plaintiff from the requirement of specificity. Instead, it undermines the credibility of Plaintiff's claim that the text of the handbook created an implied contract such that his termination represented a breach of an implied contract. Comparable to the pleading situation in <u>Mitchell</u>, Plaintiff's allegations do not meet the <u>Iqbal-Twombly</u> standard because they are merely bare allegations.

As such, this Court grants Defendant's Motion to Dismiss as to Count Four of the Complaint.

### D. Count Five: Violation of Implied Covenant of Good Faith and Fair Dealing

11

In New Jersey, every contract contains an implied covenant of good faith and fair dealing. Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc., 182 N.J. 210, 864 A.2d 387, 395 (N.J. 2005). Generally, New Jersey courts define good faith as "honesty in fact and the observance of reasonable conduct that does not violate community standards of fair dealing in the trade." N.J. Stat. Ann. 12A:2–103(1)(b). Good faith conduct is conduct that comports with "community standards of decency, fairness or reasonableness." Brunswick Hills, 864 A.2d at 395 (internal quotations omitted).

In order to succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must prove that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract [unless excused]; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm. Wade v. Kessler. Inst., 778 A.2d 580, 586 (N.J. Super. Ct. App. Div. 2001).

Plaintiff argues that Defendant violated the implied covenant of good faith and fair dealing. This claim, however, is not substantiated by the facts in the Complaint. Specifically, as discussed above in Section III(C), the Complaint does not sufficiently allege facts to support the existence of a contractual relationship between the employee and employer. As such, Plaintiff's claim fails to establish Part I of the four-part test. Therefore, the alleged breach of the implied covenant of good faith and fair dealing claim cannot prevail, and the Court grants Defendant's Motion to Dismiss as to Count Five of the Complaint.

### E. Count Six: Intentional Infliction of Emotional Distress

Count Six of the Amended Complaint contends that in addition to all allegations contained in the Complaint, "Defendants have intentionally engaged in wrongful conduct which has resulted in the emotional distress of Plaintiff." Am. Compl., ¶¶ 45, 46.

To prove a claim for the intentional infliction of emotional distress, a plaintiff must show: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions proximately caused plaintiff's emotional distress; and (4) plaintiff's emotional distress was "so severe that no reasonable man could be expected to endure it." Buckley v. Trenton Sav. Fund Soc., 544 A.2d 857, 863 (N.J. 1988) (citing Restatement (Second) of Torts § 46 cmt. d (1965)).

The New Jersey Supreme Court has held that for conduct to be extreme and outrageous, a plaintiff must show that the conduct must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Restatement (Second) of Torts, § 46 cmt. d (1965)). Plaintiff carries a heavy burden of proving such an action in light of the fact that "the limited scope of the tort tolerates many kinds of unjust, unfair and unkind conduct." Bishop v. Okidata, et al., 864 F.Supp. 416, 427 (D.N.J. 1994) (internal citations omitted). While Plaintiff is not required to prove the four elements of an emotional distress claim at this time, all elements must be alleged. See Brangan v. Ball Plastic Container Corp., No. CIV. 11-5470, 2012 WL 1332663 (D.N.J. Apr. 17, 2012). According to the facts alleged in Plaintiff's Amended Complaint, this burden has not been met, and a claim for which relief can be granted has not been established.

Here, Plaintiff's intentional infliction of emotional distress claim is related to Plaintiff's termination from his position at Defendant Corporation. Plaintiff alleges that Defendant terminated him after 23.5 years of service and initially denied his unemployment claim, actions

which contributed to his "financial turmoil." Am. Compl., ¶¶ 18-20. Also, Plaintiff alleges that

his termination has "forced him to recount the incident over and over again," that he is only

receiving 24% of the pension benefits he accrued during his time of employment with Defendant

Corporation, and that he is being denied a lump sum pension payment. Id. at ¶¶ 21-23. For these

reasons, Plaintiff grounds his claim for intentional infliction of emotional distress.

      The Court finds that these facts do not sufficiently allege the elements required to

establish a claim for intentional infliction of emotional distress. The Amended Complaint does

not sufficiently allege facts showing that Defendant intended to cause Plaintiff's emotional

distress, that Defendant's behavior toward Plaintiff was extreme and outrageous, or that

Plaintiff's emotional distress was adequately severe. In particular, viewed in the light most

favorable to Plaintiff, Defendant's behavior was not so outrageous in conduct, or so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and

utterly intolerable in a civilized community. See, e.g., Buckley, 544 A.2d 857; Settineri v. PNC

Bank Corp., 854 A.2d 922, 927 (N.J. Super. App. Div. 2004) (affirming dismissal of an

intentional infliction of emotional distress claim that arose out of allegations of employment

discrimination, based upon negative performance appraisals, reprimands and the denial of

transfer requests).

      The Court further finds that Plaintiff's intentional infliction of emotional distress claim is

based on the same allegations supporting Plaintiff's LAD claim. As such, Plaintiff is not entitled

to relief because "supplementary common law causes of action [i.e., intentional infliction of

emotional distress] may not go to the jury when a statutory remedy under the LAD exists."

Catalane v. Gilian Instrument Corp., 271 N.J. Super. 476, 492, 638 A.2d 1341 (App. Div. 1994).

According to the New Jersey Superior Court in Catalane, "[o]ur Legislature has declared the

remedies available under the LAD and would appear to have expressed the view that a common law claim for discrimination is unnecessary as the statute should be read broadly enough to encompass those claims and damages previously available at common law." Id.

Because of the foregoing reasons, Defendant's Motion to Dismiss Count Six of the Complaint is granted.

### F. Count Seven: Defamation

In Count Seven, Plaintiff alleges a claim for defamation. Defendant argues that Plaintiff has not sufficiently alleged a claim for defamation because the Complaint does not set forth the allegedly defamatory words themselves. Br. in Support of Def.'s Mot. to Dismiss, 13. Defendant argues that a defamation claim brought in New Jersey "must allege 'the defamatory words, the person who uttered them, and when, where, and to whom they were published.'" Br. in Support of Def.'s Mot. to Dismiss, 13, citing Doug Grant, Inc. v. Greate Bay Casino Corp., 3 F. Supp. 2d 518, 538 (D.N.J. 1998).

Federal notice-pleading rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Iqbal pleading regime arguably increases the required specificity by insisting that the complaint contain enough factual matter to render the claim for relief plausible as opposed to merely possible. See Fowler, 578 F.3d at 210. Under New Jersey law, defamation consists of: (1) a defamatory statement; (2) concerning the plaintiff; (3) which was false; (4) that was communicated to someone other than the plaintiff; (5) with fault at least amounting to negligence; and (6) damages. Cristelli v. Filomena II, Inc., No. CIV 99-2862, 1999 WL 1081290, at *2 (D.N.J. Dec.1, 1999) (citing Monroe v. Host Marriott Serv. Corp., 999 F.Supp. 599, 603 (D.N.J.1998)); DeAngelis v. Hill, 847 A.2d 1261, 1267-68 (N.J. 2004) (citing Restatement (Second) of Torts, § 558)).

In <u>Badrinauth v. Metlife Corp.</u>, for example, the plaintiff asserted a defamation claim, alleging that the defendants posted a photograph of him "with an admonition disparaging [his] character." No. CIV.A. 04-2552, 2006 WL 288098, at *6 (D.N.J. Feb. 6, 2006) (internal quotation marks omitted). The district court dismissed the defamation claim for failure to "meet the pleading requirements for a claim of defamation under New Jersey law." <u>Id.</u> The court did not engage in an overt vertical choice of law analysis. Instead, citing to the Third Circuit's decision in <u>In re Alpharma Sec. Litig.</u>, 372 F.3d 137, 147 (3d Cir. 2004), the court simply stated that the legal sufficiency of a complaint is "based on whether it satisfies the relevant pleading requirements." <u>Id.</u>

In the instant case, the Amended Complaint does not state the precise words alleged to be defamatory; however, it supports its defamation claim by contending that, "Defendants falsely defamed Plaintiff by stating that he was terminated from his employment with Exxon due to 'misconduct,'" that "Defendants made the false and defamatory statements to third-parties," and that "[a]s a result of Defendants' defamatory statements, Plaintiff has suffered damages both economic and emotional." Pl. Compl., ¶¶ 48-50. Plaintiff's responsive brief does not cite any legal authority to counter Defendant's contentions regarding the insufficiency of the defamation claim nor does he cite any authority to support the sufficiency of his pleading.

In <u>Ciemniecki v. Parker McCay P.A.</u>, the lack of specificity of words contained in the Complaint was unproblematic because the defendants had notice of what the plaintiff believed was falsely said about her, and why she believed the defendants were at fault for the allegedly false statements. <u>Ciemniecki v. Parker McCay P.A.</u>, No. CIV No. 09-6450, 2010 WL 2326209, at *5 (D.N.J. June 7, 2010). In <u>Ciemniecki</u>, the court found that the complaint sufficiently alleged a claim for defamation because the facts supported an inference that the defendant

16

negligently or intentionally provided false information to the police or ignored videotape evidence which would have exonerated the plaintiff. Id.

The Ciemniecki Court found that the allegations made in the Complaint were "consistent with Iqbal, sufficient to state a defamation claim under Rule 8(a), regardless of whether New Jersey would apply a more heightened standard to Plaintiff's pleading were the action prosecuted in New Jersey state court." Id.; see Filomena II, Inc., 1999 WL 1081290, at *3 ("According to Rule 8, a defamation pleading does not need to cite precise defamatory statements, it must only provide sufficient notice to the other party of the allegations made against him.")).

Here, unlike the claim in Ciemniecki, the lack of specific allegations of in the instant Complaint is problematic because the content is insufficient to provide notice to the Defendant of the allegations made against it. In addition, in the instant Complaint, Plaintiff alleges facts inconsistent with the falsity of the alleged "misconduct." Compl., ¶ 48. As described above, falsity is required to establish a defamation claim. In Count One of his Complaint, Plaintiff states that "Plaintiff was terminated because of upper management[']s possible loss of monetary bonus due to the incident possibly being reported to O.S.H.A. or another regulatory entity." Compl., ¶ 26 (emphasis added). Plaintiff's reference to "the incident" acknowledges the existence of a potential violation of workplace procedure and provides explanation for Defendant's alleged statements that Plaintiff had participated in "misconduct."

As such, this Court grants Defendant's Motion to Dismiss as to Count Seven.

**G. Count One: Termination in Violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq.**

After granting Defendant's Motion to Dismiss Counts Two through Seven of the Amended Complaint pursuant to the Federal Rule of Civil Procedure 12(b)(6), the only count

which remains is Count One, which asserts that Plaintiff's termination was in violation of the

New Jersey Law Against Discrimination ("LAD") N.J.S.A. 10:5-1, et seq. Count One was not

brought before this Court on Defendant's Motion to Dismiss.

### H. Leave to Amend

Principles of equity dictate that Plaintiff be allowed a chance to correct the factual and

legal deficiencies in his Complaint and proceed to the merits of his claims. Accordingly, the

Court finds that the accompanying Order must be construed as a Motion to Dismiss without

prejudice. Therefore, Plaintiff may request, within the requisite time period stated in the Order,

leave to amend Counts Four, Five, or Six of the Complaint to allege sufficient specificity.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Counts Two through Seven of

Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is

**GRANTED**. An accompanying Order shall issue today.


Dated:  7/24/12                                    _/s/ Robert B. Kugler_____
                                                   ROBERT B. KUGLER
                                                   United States District Judge